**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**Cynthia Gaddis, OSB No. 113907**
cindygaddis@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

Of Attorneys for the plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAVID UPDIKE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF GRESHAM, a municipal corporation, MULTNOMAH COUNTY, and STATE OF OREGON,<br><br>Defendants. | Case No. 3:13-cv-01619-SI<br><br>**AMENDED COMPLAINT**<br>**(Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, Negligence)**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1.

This action is an action for damages, injunctive, declaratory and equitable relief, including

compensatory damages, punitive damages, and attorney fees and costs, to redress violations of

Title II of the Americans With Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12101 et seq.,

PAGE 1 – AMENDED COMPLAINT

violations of federal statutory rights pursuant to 42 U.S.C. § 1983, and pursuant to Section 504 of

the Rehabilitation Act of 1973, as amended, 29 U.S.C. Subsection 701 35 seq. (hereinafter, the

"Rehabilitation Act"). Plaintiff has also pleaded pendent state claims for negligence.

## JURISDICTION

2.

This Court has subject matter jurisdiction under 28 U.S.C. Section1331, federal question

jurisdiction, and 28 U.S.C. Sections 1331, 1332, and 1343 civil rights jurisdiction.

3.

Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C.

Section 1367 with respect to all causes of action based on Oregon statutory provisions or common

law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.

Venue is proper in this Judicial District pursuant to 28 U.S.C. Section 1391(b) because the

claim arose in this Judicial District.

5.

On July 3, 2013, Plaintiff complied with the Oregon Tort Claims Act for claims under

Oregon law against the City of Gresham by sending his Notice of Tort Claim for claims under

Oregon law by email, first class mail, and certified mail to Marlee Smith-Janney, Risk Manager,

City of Gresham Risk Manager, making a claim against the City of Gresham.

6.

On July 3, 2013, Plaintiff complied with the Oregon Tort Claims Act for claims under

Oregon law against Multnomah County by sending a Notice of Tort Claim by email, first class

mail, and certified mail to Michelle C. Cross, Risk Manager, Multnomah County, Multnomah

PAGE 2 – AMENDED COMPLAINT

County Risk Management, making a claim against Multnomah County, Oregon.

7.

On July 3, 2013, Plaintiff complied with the Oregon Tort Claims Act for claims under Oregon law against the State of Oregon by sending a Notice of Tort Claim by email, first class mail, and certified mail to Shelly Hoffman, Risk Manager, Department of Administrative Services, making a claim against the State of Oregon.

## PARTIES

8.

Plaintiff David Updike (hereafter "Plaintiff") is a citizen of the United States of America. At all times relevant, Plaintiff was a resident of Gresham, Multnomah County, Oregon. Plaintiff is a qualified individual with a disability in that Plaintiff has been deaf since birth. Plaintiff communicates through American Sign Language (ASL), which is his preferred method of communication.

9.

Defendant City of Gresham (hereafter "Defendant City") is a municipal corporation within Multnomah County, State of Oregon.  At all times material, Defendant City and its employees provided local government services to residents of the City of Gresham, including, but not limited to, law enforcement and police services through its Gresham Police Department (hereafter "GPD").

10.

At all times material, GPD police officers Matthew B. Harris-Meyers (Harris-Meyers), DPSST #52706, Brian C. Schrader (Schrader), DPSST #31298, Tracy W. Tennyson (Tennyson), DPSST #20265, Barry W. Ozeroff (Ozeroff), DPSST #27792, and Sergeant Michael G. Amend

PAGE 3 – AMENDED COMPLAINT

(Amend), DPSST #34504, were employed by Defendant City. All acts of said Gresham police officers and Sergeant Amend as alleged herein were acting within the course and scope of their employment with Defendant City.

11.

Defendant Multnomah County (Defendant County) is a political subdivision of the State of Oregon. Defendant County has offices at 501 SE Hawthorne Boulevard, Portland, Oregon 97214. Defendant County owns and operates correctional facilities or jails in Multnomah County Oregon including but not limited to the Multnomah County Detention Center Jail and the Multnomah County Inverness Jail.

12.

Defendant State of Oregon ("Defendant State") administers the Oregon Circuit Court System and operates a courtroom at the Multnomah County Justice Center for court appearances for individuals charged with crimes.

## GENERAL FACTUAL ALLEGATIONS

13.

At all times material, Defendant City's GPD  "Police Department Manual of Policy and Procedure" ("Manual") did not contain policy and procedures for police officers to follow when contacting or interviewing crime victims, witnesses, or alleged perpetrators with disabilities, including crime victims,  witnesses, or alleged perpetrators who are deaf. The Manual does not instruct officers to call for ASL interpreters to assist deaf crime victims, witnesses, or alleged perpetrators. To Plaintiff's best knowledge, at all times relevant to this complaint, the GPD did not have a written policy that instructs its officers when an ASL interpreter must be called to assist with communication with deaf people.  If Defendant City had such policies, Defendant City's

PAGE 4 – AMENDED COMPLAINT

police officers and employees disregarded such policies in their interactions with Plaintiff from January 14 through 18, 2013.

14.

On Monday, January 14, 2013, Plaintiff lived at 1452 NE Paropa Court, Gresham, Oregon 97030.

15.

At all times material, Karla McEvoy (McEvoy) was and is a resident of the State of Washington.  McEvoy has never resided with Plaintiff.

16.

On January 14, 2013, at about 12:53 pm, Plaintiff's neighbor Christina Emerson called the 911 operator and reported that someone came to her door and wrote a note that there was a disturbance at Plaintiff's address. Christina Emerson told the 911 operator that all parties involved in the disturbance were deaf.  The 911 operator dispatched police officers to Plaintiff's residence between 12:56 pm and 1:09 pm.

17.

On January 14, 2013, between 1:09 pm and 2:00 pm, while Plaintiff was working in the garage of his home on NE Paropa Court, GPD Officers Harris-Meyers, Schrader, Tennyson, and Ozeroff entered the garage and physically grabbed Plaintiff.  They placed him under arrest. The police officers knew that Plaintiff is deaf.  Defendant City's police officers did not provide Plaintiff with an American Sign Language (ASL) interpreter. The officers did not communicate with Plaintiff through ASL.

18.

As Defendant City's police officers arrested Plaintiff, he signed to them in ASL, "What did

PAGE 5 – AMENDED COMPLAINT

I do?"  The officers ignored him. Plaintiff then tried to speak the words, "What did I do?"  The officers again ignored him. The police officers took Plaintiff to a police car.  At the police car, Plaintiff again asked again in words, "Why am I being arrested?"  The police officers refused to communicate with Plaintiff and roughly pushed him into the police car.  Plaintiff saw the officers laughing at him.  Plaintiff was stunned by the turn of events. Plaintiff was embarrassed by the arrest and humiliated when he saw the officers laughing at him.

19.

Had the police officers communicated with Plaintiff through an ASL interpreter, the police would have learned the following: Plaintiff had not harmed McEvoy;  McEvoy had been pressuring Plaintiff to give her money, which he had refused to do;  McEvoy physically attacked Plaintiff when he did not give her money; McEvoy was the perpetrator of an assault and battery on Plaintiff; Plaintiff was so concerned about  McEvoy's behavior that he had locked his bedroom door to prevent McEvoy from entering the room; and Plaintiff had gone to his garage to work in order to avoid McEvoy.

20.

On January 14, 2013, the Defendant City's police officers took Plaintiff to Defendant Multnomah County's Justice Center jail (MCDC) for booking. Plaintiff requested an ASL interpreter, but none was provided. Plaintiff also requested a Text Telephone (TTY), a telecommunication device for the Deaf.   Plaintiff was made to wait for several hours.  Finally, a corrections officer told Plaintiff that they could not find a TTY.  Defendant Gresham police officers directed Plaintiff to write out a statement of what occurred between Plaintiff and McEvoy without the accommodations of a TTY or an ASL interpreter.

PAGE 6 – AMENDED COMPLAINT

21.

After Plaintiff was booked at the MCDC, Plaintiff was held in custody by correctional employees of the Defendant Multnomah County's Sheriff's Office (MCSO). The MCSO then transferred Plaintiff to the Multnomah County Inverness facility (MCIJ) where Plaintiff was held. Defendant County did not provide Plaintiff with an ASL interpreter while Plaintiff was being held in its custody at MCDC or MCIJ.

22.

On January 15, 2013, Plaintiff was scheduled for arraignment and was to be considered for release. Plaintiff asked an MCSO corrections officer if there would be an interpreter for him for his court appearance.  The corrections officer said he was not sure.  Despite the fact that Defendant County's MCSO employees knew that Plaintiff was deaf, no arrangements were made for an ASL interpreter to be present to interpret for Plaintiff and the judge at Plaintiff's court appearance.

23.

On January 15, 2013, Plaintiff appeared in Court by video conference at approximately 2:00 p.m. Defendant State did not have an ASL interpreter for Plaintiff. Judge Kathleen Dailey, who was in charge of the criminal docket that day, said on the record, "How come we sent someone for arraignment knowing they're deaf?"  Plaintiff was unable to effectively communicate with the judge.  Judge Dailey delayed Plaintiff's arraignment and release until the next day so the court could arrange for an ASL interpreter to be present.  Because Defendants County and State did not provide Plaintiff with an ASL interpreter, Plaintiff's arraignment and ultimate release from custody was delayed by a full day.

PAGE 7 – AMENDED COMPLAINT

24.

On January 16, 2013, after 2:55 pm, Plaintiff was finally arraigned with the assistance of an ASL interpreter. On January 16, 2013, that judge ordered his release from jail. After Plaintiff was released from jail, he returned to his home and discovered that his locked bedroom had been broken into and ransacked, his personal identification was stolen, his light blue 1998 Ford Windstar van was stolen, and other personal property he owned had also been stolen.

25.

On January 16, 2013, Plaintiff's daughter made a 911 call on behalf of Plaintiff to request assistance for him.  Plaintiff's daughter, who is not deaf, informed the operator that she was calling on Plaintiff's behalf because he was hearing impaired.  Defendant City dispatched one of its police officers, Mark S. Smith (Officer Smith), to Plaintiff's residence. Officer Smith did not bring an ASL interpreter. Plaintiff's daughter told the Gresham police officer about the break-in to Plaintiff's bedroom and that Plaintiff's van had been stolen. Officer Smith said that Plaintiff could not file a report of a stolen vehicle for another 12 hours. Officer Smith gave Plaintiff his card with a case number written down on it.

26.

On January 17, 2013, Plaintiff's daughter called Ms. McEvoy.  McEvoy told her that she had Plaintiff's van and was driving Plaintiff's van back to Gresham from Tacoma, Washington. Plaintiff's daughter made two calls to the 911 emergency and non-emergency numbers to report the theft of Plaintiff's van. She told the 911 operators that Plaintiff was hearing impaired.

27.

On January 17, 2013, at approximately 4:25 p.m., Plaintiff called the 911 operator himself

PAGE 8 – AMENDED COMPLAINT

with the assistance of an ASL interpreter. Through the interpreter, Plaintiff reported the theft of his van and requested a police officer to come take a report because it had been more than 12 hours since his initial report to Defendant City's police. At approximately 4:35 p.m., Defendant City's police officer Harris-Myers arrived at Plaintiff's home without an ASL interpreter.  Plaintiff asked Officer Harris-Myers to provide an ASL interpreter to assist him in communicating with him. Officer Harris-Meyers and Defendant City of Gresham did not provide Plaintiff with a qualified ASL interpreter to facilitate communication. Plaintiff gave Officer Harris-Myers the card from Officer Smith with the case number on it.  Officer Harris-Myers asked Plaintiff to write everything that had been reported to Officer Smith down for him. Officer Harris-Myers took the card and left to go talk to his sergeant.  Officer Harris-Myers returned said he would file a police report that Plaintiff's van had been stolen.  Officer Harris-Meyers wrote a new case number down on his card and gave that to Plaintiff.  Plaintiff asked Officer Harris-Meyers if he needed the card with the January 16, 2013 case number on it.  Officer Harris-Meyers told Plaintiff not to worry about it.

28.

Plaintiff later learned that Defendant City's Officer Harris-Myers wrote a GPD report about his contact with Plaintiff, but had not reported Plaintiff's van as stolen.  Officer Harris-Meyers wrote in the report that he spoke with Sergeant Amend, and that both agreed not to list the vehicle as stolen.  Also in the report, Officer Harris-Meyers documented that Plaintiff had a phone number for a friend of Plaintiff's in Tacoma, Washington who had seen Plaintiff's van at McEvoy's house. Officer Harris-Myers wrote of that witness, "[H]is friend was deaf and I was unable to talk with him."

29.

On January 18, 2013, Plaintiff again contacted Defendant City's police to complain that

PAGE 9 – AMENDED COMPLAINT

Defendant City had not entered the van as being stolen in the nationwide system. Plaintiff reported this because he called the Washington State Patrol who told him that there was no report in the nationwide system that Plaintiff's van had been stolen.

30.

On January 18, 2013, Plaintiff talked to another of Defendant City's police officers about the theft of his van. Defendant City's police officer merely asked Plaintiff why he had not gone to get the van if he knew where it was located. Because Plaintiff had pending criminal charges initiated by Defendant City, Plaintiff was prohibited from leaving the State of Oregon under the terms of his release from custody.

31.

Although Plaintiff reported his van stolen, Defendant Multnomah County's District Attorney did not pursue a criminal case against McEvoy for theft. Plaintiff was told that the theft was not being pursued because there were pending criminal charges against Plaintiff.

31a.

While Plaintiff awaited trial on the criminal charges related to the January 14, 2013 arrest, Plaintiff was under the supervision of employees of Defendant Multnomah County.  Plaintiff requested an ASL interpreter to aid in Plaintiff's communication with the supervising employees. Defendant Multnomah County did not provide an interpreter to aid in communication between Plaintiff and the supervising employees.

32.

On April 22, 2012, Defendant Multnomah County's District Attorney's Office dismissed all criminal charges against Plaintiff.  However, Defendant County's District Attorney's Office still did not pursue stolen vehicle charges against McEvoy.

PAGE 10 – AMENDED COMPLAINT

## FIRST CLAIM FOR RELIEF
### (Americans With Disabilities Act-Title II: 42 U.S.C. §12131 et seq.)
### (Against Defendants City of Gresham and Multnomah County)

33.

Plaintiff re-alleges all relevant prior paragraphs.

34.

At all times material, Defendants City and County were and are each a public entity for the purpose of, and subject to, the Americans with Disabilities Act (ADA). Defendants each provide public services.

35.

Plaintiff has physical impairments that substantially limit one or more of his major life activities. Plaintiff is hearing impaired and has been deaf since birth. Plaintiff is a qualified individual with a disability under the ADA.

36.

At all relevant times, Defendants City and County were aware of Plaintiff's physical disabilities, namely that Plaintiff was deaf.

37.

Defendants City and County discriminated against Plaintiff by excluding him from or denying him an equally effective opportunity to participate in or receipt of the benefits of Defendants' services, programs, or activities.

38.

Defendants City and County denied Plaintiff the benefits of Defendants' services and programs by failing to comply with 28 CFR § 35.107 and 28 CFR § 35.106, which require public entities to designate and provide notice of a responsible employee to coordinate efforts to comply

PAGE 11 – AMENDED COMPLAINT

with and carryout out responsibilities of Title II of the ADA.

39.

Defendants City and County denied Plaintiff the benefits of Defendants' services and programs by failing to provide adequate communication services through a qualified American Sign Language interpreter. Defendant County denied Plaintiff the benefits of Defendant's services and programs through failure to provide an ASL interpreter and failure to promptly provide a TTD while Plaintiff was in custody.  Defendant County also failed to provide an ASL interpreter during Plaintiff's pretrial release while he was under the supervision of Defendant County's employees.

40.

Defendants City and County's actions were intentional and/or conducted with a deliberate indifference to Plaintiff's rights.

41.

Defendants City and County knew that Plaintiff requested an interpreter as an auxiliary aid for communication, disregarded Plaintiff's request without making an effort to determine if it was possible to accommodate his request, and failed to provide an adequate auxiliary aid in lieu of a qualified interpreter during multiple separate events: his arrest without an interpreter, booking without an interpreter or use of TTD, the GPF interview at the jail without an interpreter or TTD, Defendant County's incarceration of Plaintiff without access to an ASL interpreter, and Defendant County's failure to arrange for the assistance of an ASL for Plaintiff's first court appearance.

42.

Defendants City and County's actions constitute discrimination under Title II of the ADA.

PAGE 12 – AMENDED COMPLAINT

43.

As a result Defendants City and County's unlawful actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of his personal dignity and right to be free from discrimination or interference with his statutory rights.

44.

Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, medical bills, moving expenses, and other expenses. Plaintiff's economic damages are not expected to exceed $15,000. Plaintiff reserves the right to amend this amount prior to or during trial, as the evidence requires.

45.

Plaintiff is entitled to injunctive relief as against Defendants, including, but not limited to, an order prohibiting Defendants City and County from continued discrimination against people with disabilities by refusing to provide adequate ASL interpretation services to deaf persons and an order mandating full compliance with Title II of the ADA.

46.

Defendant City should also be required to establish uniform policy and procedures establishing protocols and procedures for promptly supplying ASL interpreters when contacting or interviewing a hearing impaired person as a citizen, witness, victim, defendant, suspect, or alleged perpetrator in a criminal investigation or in any civil matter.

PAGE 13 – AMENDED COMPLAINT

47.

Defendant City should also be required to establish uniform policy and procedures establishing protocols and procedures for promptly supplying live ASL interpreters, TTY, or remote video interpreters to any deaf or hearing impaired person who requests interpreter services or accommodations.

48.

Defendant County should be required to establish uniform policy and procedures establishing protocols and procedures for promptly supplying ASL interpreters or remote video interpreters to deaf or hearing impaired persons who are booked into or held in any County jail or correctional facility or who will be appearing in Court while in custody.

49.

Defendant County should be required to establish uniform policy and procedures establishing protocols and procedures for promptly arranging for and supplying ASL interpreters to deaf or hearing impaired persons who are in custody and required to make a court appearance in its circuit court.

50.

Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in an amount to be proven at trial. Plaintiff should also be entitled to award of his economic loss.

PAGE 14 – AMENDED COMPLAINT

51.

To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

52.

Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Plaintiff is entitled to an award of attorney's fees, expert witness fees and costs incurred.

53.

Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SECOND CLAIM FOR RELIEF
**(Americans With Disabilities Act-Title II: 42 U.S.C. §12131 et seq.)**
**(Against Defendant State of Oregon)**

54.

Plaintiff re-alleges all relevant prior paragraphs.

55.

At all times material, Defendant State was and is a public entity for the purpose of, and subject to, the Americans with Disabilities Act (ADA). Defendant State provides public services.

56.

Plaintiff has physical impairments that substantially limit one or more of his major life activities. Plaintiff is hearing impaired and has been deaf since birth. Plaintiff is a qualified individual with a disability under the ADA.

PAGE 15 – AMENDED COMPLAINT

57.

At all relevant times Defendant State was aware of Plaintiff's physical disabilities, namely that Plaintiff was deaf.

58.

Defendant State discriminated against Plaintiff by excluding him from participation in or denying him an equally effective opportunity to enjoy the benefits of the services, programs, or activities of Defendant because of his disability.

59.

Defendant State denied Plaintiff the benefits of its services and programs by failing to provide adequate communication services through a qualified American Sign Language interpreter.

60.

Defendant State's actions were intentional and/or conducted with a deliberate indifference to Plaintiff's rights.

61.

Defendant State knew or should have known that Plaintiff needed an interpreter as an auxiliary aid for communication, that Plaintiff requested an interpreter, that Plaintiff was impaired in normal communication by telephone or internet due to his in custody status, and that Defendant State failed to provide an adequate auxiliary aid at Plaintiff's first criminal court appearance.

62.

Defendant State's actions and omissions constitute discrimination under Title II of the ADA.

PAGE 16 – AMENDED COMPLAINT

63.

As a result of Defendant State's unlawful actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of his personal dignity and right to be free from discrimination or interference with his statutory rights. Plaintiff suffered, and continues to suffer, economic damages, including, but not limited to, medical bills, moving expenses, and other expenses.  Plaintiff's economic damages are not expected to exceed $15,000.  Plaintiff reserves the right to amend this amount prior to or during trial, as the evidence requires.

64.

Plaintiff is entitled to injunctive relief as against Defendant, including, but not limited to, an order prohibiting Defendant State from continued discrimination against people with disabilities by refusing to provide adequate interpretation services to deaf persons and an order mandating full compliance with Title II of the ADA.

65.

Defendant State should be required to establish uniform policy and procedures establishing protocols and procedures for promptly supplying ASL interpreters to deaf and hearing impaired persons in custody who are required to appear in Circuit Court for any criminal matter.

66.

Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in an amount to be proved at trial.

PAGE 17 – AMENDED COMPLAINT

67.

To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

68.

Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Plaintiff is entitled to an award of attorney's fees, expert witness fees and costs incurred.

69.

Plaintiff is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(Section 504 of the Rehabilitation Act of 1973)**
**(Against Defendants City of Gresham, Multnomah County, and State of Oregon)**

70.

Plaintiff re-alleges all relevant prior paragraphs.

71.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, prohibits discrimination against people with disabilities by recipients of federal funding, and provides "no otherwise qualified handicapped individual . . . shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

72.

Plaintiff is deaf, and accordingly, is a qualified individual with a disability or handicap under the Rehabilitation Act.

PAGE 18 – AMENDED COMPLAINT

73.

Plaintiff has a physical impairment that substantially limits one or more major life activities including hearing and communicating; Plaintiff has a record of such impairment; and Defendants City, County, and State regarded Plaintiff as having such impairment.

74.

At all times material, Defendants City, County, and State are recipients of federal financial assistance for their programs and activities.

75.

Defendants City, County, and State's actions and omissions as described above violated Plaintiff's rights under the Rehabilitation Act by excluding him or denying him the benefits of their services on the basis of a disability.

76.

Defendants City, County, and State intentionally discriminated again Plaintiff through its actions and omissions alleged above by being aware of their obligations to address Plaintiff's needs and federally protected rights, and by failing to act at a time when it was required to protect his rights.

77.

Specifically, Defendants City, County, and State denied Plaintiff effective communication by refusing to provide him with a qualified ASL interpreter in circumstances involving the following types of communication which would be normal in criminal investigations and the arrest of a suspect. These include: explaining to the police the details of the incident and the alleged crime; discussing injuries; discussing damage to and loss of personal property; conveying and understanding one's rights as a crime victim; conveying and understanding one's rights as an

PAGE 19 – AMENDED COMPLAINT

arrestee and pretrial detainee; asserting the right to effective communication during booking and being held by a jail or correctional facility; asserting the right to an ASL interpreter for appearances in court; and asserting the right to effective communication with supervising County employees during pretrial release.

78.

Plaintiff sustained emotional distress and damages due to Defendants City, County, and State's violations of the Rehabilitation Act.

79.

Pursuant to Section 505 of the Rehabilitation Act, Plaintiff is entitled to compensation for his damages and an award of attorney fees and costs.

**FOURTH CLAIM FOR REFLIEF**
**Negligence**
**(Against Defendant City of Gresham)**

80.

Plaintiff re-alleges all relevant paragraphs.

81.

Defendant City's police officers who were dispatched to Plaintiff's residence on January 14 through January 18, 2013 were aware that Plaintiff is deaf.

82.

Defendant City's police officers  who responded to Plaintiff's residence on January 14, 2013, knew or should have known that failing to provide an adequate means of communication with Plaintiff would result in his not being able to effectively communicate with the police and being wrongfully arrested and held in custody.

PAGE 20 – AMENDED COMPLAINT

83.

Defendant City's police officers who responded to Plaintiff's residence on January 16 and 17, 2013 knew or should have known that failing to provide adequate means of communication with Plaintiff would result in his not being able to effectively communicate with the police and being wrongfully deprived of police assistance in getting his van back by the police's refusal to report the van as stolen or even inform Plaintiff that they refused to report the van as stolen.

84.

Plaintiff's interests in his liberty and his property are protected by law.

85.

Defendant City's Police Department and its officers acted unreasonably in refusing to provide an ASL interpreter before arresting Plaintiff; in refusing to provide an ASL interpreter after arresting him; in refusing to provide an ASL interpreter when Plaintiff tried to report his van as stolen; and refusing to take a stolen vehicle report.

86.

As a consequence of Defendant City's unreasonable conduct, Plaintiff was wrongfully arrested; Plaintiff was detained in jail; his personal property was damaged and stolen; and it took Plaintiff months to get his van back to Oregon. Plaintiff not only lost the use of his van while it was stolen, he had to spend money on repairs to get the van running after McEvoy finally relinquished the stolen vehicle.

87.

Defendant City's conduct on January 14, 2013, January 16, 2013, and January 17, 2013 was a substantial factor in causing Plaintiff harm.

PAGE 21 – AMENDED COMPLAINT

88.

As a result of the conduct of Defendant City's officers, Plaintiff suffered from economic damages and noneconomic damages in an amount to be proved at trial.

89.

In the alternative, Defendant City's officers have a duty to establish probable cause before arresting individuals.

90.

Defendant City's officers did not make reasonable efforts to establish probable cause before arresting Plaintiff by denying him auxiliary aids for him to communicate effectively with the officers.

91.

As a result of the officers' breach of their duty, Plaintiff was deprived of his liberty and suffered damage to his personal property.

92.

Defendant City should anticipate that deaf individuals will wrongfully be deprived of their liberty and property when it denies the necessary auxiliary aids for effective communication between its officers and deaf crime victims, witnesses, and suspects.

93.

Plaintiff's wrongful arrest and detainment and the damage to his personal property is the type of harm that Defendant City should anticipate might result from denying effective communication services with deaf crime victims, witnesses, and suspects.

PAGE 22 – AMENDED COMPLAINT

94.

Defendant City is responsible for the conduct of its employees which caused foreseeable harm to Plaintiff.

95.

Plaintiff is entitled to a prevailing party fee, his costs and his disbursements.

## FIFTH CLAIM FOR RELIEF
### Negligence
### (Against Defendant Multnomah County)

96.

Plaintiff re-alleges all relevant paragraphs.

97.

Defendant County's corrections officers knew that Plaintiff was deaf.  It was foreseeable that failing to provide Plaintiff with necessary auxiliary aids for effective communication such as an ASL interpreter at booking, while in custody, and at his first scheduled court appearance would result in harm to Plaintiff.

98.

Plaintiff's interests in his liberty and his property are protected by law.

99.

Defendant County's conduct in failing to provide Plaintiff with necessary auxiliary aids for effective communication such as an ASL interpreter was unreasonable.

100.

 Defendant County's conduct on January 14, 2013 and January 15, 2013 was a substantial factor in causing Plaintiff harm.

PAGE 23 – AMENDED COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

101.

As a result of Defendant County's conduct, Plaintiff suffered from economic damages and noneconomic damages in an amount to be proved at trial.

102.

In the alternative, Defendant County has a duty to protect the rights of persons in its custody.

103.

Defendant County did not protect Plaintiff's rights by denying him auxiliary aids for him to communicate effectively with corrections officers and court officials.

104.

As a result of Defendant County's breach of its duty, Plaintiff was deprived of his liberty and suffered damage to his personal property.

105.

Defendant County should anticipate that deaf individuals will wrongfully be deprived of their liberty and property when it denies the necessary auxiliary aids for effective communication between its officers and deaf crime victims, witnesses, suspects, and pretrial detainees.

106.

Plaintiff's wrongful arrest and detainment and the damage to his personal property is the type of harm that Defendant County should anticipate might result from denying effective communication services with deaf crime victims, witnesses, suspects, and pretrial detainees.

107.

Defendant County is responsible for the conduct of its employees which caused foreseeable harm to Plaintiff.

PAGE 24 – AMENDED COMPLAINT

108.

Plaintiff is entitled to a prevailing party fee, his costs and his disbursements.

### SIXTH CLAIM FOR RELIEF
**Negligence**
**(Against Defendant State of Oregon)**

109.

Plaintiff re-alleges all relevant paragraphs.

110.

Defendant State knew or should have known that failing to provide a means by which a deaf person in custody can request an ASL interpreter for his first appearance in court would risk causing harm to Plaintiff, a deaf person in custody.   It was foreseeable that Plaintiff would have to spend additional time in custody if no means was provided for him to request that an ASL interpreter be present at his first scheduled appearance from the jail facility and no ASL was present at his first scheduled court appearance.

111.

Defendant State knew or should have known that failing to have an ASL interpreter on call would cause harm to a deaf person in custody scheduled for arraignment by not allowing him to effectively communicate with the court, prolonging the time the person must spend in custody.

112.

Plaintiff's interest in his liberty is protected by law.

113.

Due to the unreasonable actions of Defendant State in failing to provide Plaintiff with an ASL interpreter for his arraignment, Plaintiff was held a day longer in custody.

PAGE 25 – AMENDED COMPLAINT

114.

Defendant State's conduct on January 15, 2013 was a substantial factor in causing Plaintiff harm.

115.

As a result of Defendant State's conduct, Plaintiff suffered from economic damages and noneconomic damages in an amount to be proved at trial.

116.

Plaintiff is entitled to a prevailing party fee, his costs and his disbursements.

**SEVENTH CLAIM FOR RELIEF**
**False Arrest**
**(Against Defendant Multnomah County)**

117.

Plaintiff re-alleges all relevant prior paragraphs.

118.

Defendant County intentionally confined Plaintiff at MCDC and MCIJ.

119.

Plaintiff was aware that he was confined at MCDC and MCIJ.

120.

By the time Defendant County arraigned Plaintiff, Plaintiff had been in custody longer than 36 hours.

121.

As a result of Defendant's unlawful confinement of Plaintiff, Plaintiff lost his liberty and suffered economic and noneconomic damages in an amount to be proved at trial.

PAGE 26 – AMENDED COMPLAINT

122.

Plaintiff is entitled to a prevailing party fee, his costs and his disbursements.

**PRAYER FOR RELIEF**

Plaintiff prays for the following judgment against Defendants:

WHEREFORE, the Plaintiff seeks judgment against Defendants, jointly and severally, and requests that this Court enter an Order as follows:

a)   Accepting jurisdiction of this case and declaring that Defendants have each violated Title II of the ADA;

b)   Accepting jurisdiction of this case and declaring that Defendants have each violated Section 504 of the Rehabilitation Act of 1973 and have intentionally discriminated against Plaintiff in violation of the Rehabilitation Act.

c)   Injunctive and other equitable relief as the Court deems appropriate, including but not limited to, an Order requiring all Defendants to provide qualified American Sign Language interpreters and auxiliary aids, to establish polices to accommodate deaf people, and requiring Defendants City of Gresham and Defendant Multnomah County to appoint and train ADA coordinators.

d)   To require Defendants to establish a policy and procedure for ensuring deaf persons in custody will have an ASL interpreter at the person's first appearance in court and subsequent court appearances.

e)   A sum which will fully compensate Plaintiff for his non-economic damages in a sum that is just as determined by a jury;

f)   A sum which will fully compensate Plaintiff for his economic damages in a sum that is just as determined by a jury;

PAGE 27 – AMENDED COMPLAINT

g)    Plaintiff's costs and disbursements incurred herein;

h)    Plaintiff's attorney fees; and

i)    For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

DATED this 1st day of June, 2014.

Law Offices of Daniel Snyder

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
Cynthia Gaddis, OSB No. 113907
cindygaddis@lawofficeofdanielsnyder.com
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for Plaintiff

PAGE 28 – AMENDED COMPLAINT