# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**DAVID UPDIKE**,

        Plaintiff,

v.

**CITY OF GRESHAM, MULTNOMAH COUNTY,** and **STATE OF OREGON**,

        Defendants.

Case No. 3:13-cv-01619-SI

**OPINION AND ORDER**

Daniel J. Snyder, Carl L. Post, and John D. Burgess, LAW OFFICES OF DANIEL SNYDER, 1000 S.W. Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Jenny M. Madkour, County Attorney, and David N. Blankfeld, Assistant County Attorney, MULTNOMAH COUNTY, 501 S.E. Hawthorne Blvd., Suite 500, Portland, Oregon 97214. Of Attorneys for Defendant Multnomah County.

**Michael H. Simon, District Judge.**

        Plaintiff, David Updike ("Updike" or "Plaintiff"), maintains this action against Defendant

Multnomah County (the "County"), final judgments having been entered as to Plaintiff's claims

against the City of Gresham and State of Oregon. Updike alleges violations of the Vocational

Rehabilitation Act of 1973 ("Rehabilitation Act")[1] and Title II of the Americans with Disabilities

---

[1] 29 U.S.C. § 794.

Act ("ADA").[2] Additionally, Updike brings state law claims for negligence and false arrest. Before the Court is the County's Motion for Summary Judgment. For the reasons discussed below, the County's motion is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

## BACKGROUND

On January 14, 2013, Plaintiff was arrested at his home by officers of the Gresham, Oregon police department. Plaintiff was booked at the Multnomah County Detention Center in the Justice Center and later transferred to the Multnomah County Inverness Jail (the "Jail"), where Plaintiff was held for arraignment the next day. On January 15, 2013, Plaintiff appeared

---

[2] 42 U.S.C. § 12132.

PAGE 2 – OPINION AND ORDER

for arraignment by video conference before Multnomah County Circuit Judge Kathleen Dailey. No American Sign Language ("ASL") interpreter was present. When Judge Dailey learned that Plaintiff was deaf, she postponed Plaintiff's arraignment to the following day when an ASL interpreter would be available. As a result of this delay, Plaintiff was held overnight at the Jail. On January 16, 2013, Plaintiff again appeared for arraignment, and an ASL interpreter was provided for him. Plaintiff was arraigned and released that day.[3]

## DISCUSSION

### A.  Plaintiff's Claims under the ADA and Rehabilitation Act

Plaintiff brings claims under the ADA and the Rehabilitation Act, seeking both monetary damages and equitable relief. Plaintiff alleges that the County failed to provide him with an ASL interpreter or other auxiliary aids both during his confinement in the Jail and during his interactions with the County's pretrial release services staff. The County responds that Plaintiff fails to show any genuine disputes of material fact that the County intentionally violated either the ADA or the Rehabilitation Act. The County further argues that even if Plaintiff were able to present an issue of disputed fact, Plaintiff's claims are barred on the basis of judicial immunity, because any harm suffered by Plaintiff was solely the result of Judge Dailey's actions.

### 1.  Standing to Seek Equitable Relief under the ADA and Rehabilitation Act

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, both the Supreme Court and the Ninth Circuit have held that whether or not either party raises the issue, "federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (quoting *Bernhardt*

---

[3] The criminal charges against Plaintiff were ultimately dismissed.

*v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir.2001)) (emphasis added); *see also United States v. Hays*, 515 U.S. 737, 742 (1995). Therefore, although neither Updike nor the County addressed in their briefs the issue of Plaintiff's standing to seek equitable relief, the Court has "both the power and duty to raise the adequacy of [plaintiff's] standing sua sponte." *Bernhardt*, 279 F.3d at 868.

To invoke the jurisdiction of the federal courts, a disabled person claiming discrimination under the ADA or the Rehabilitation Act "must satisfy the case or controversy requirements of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Standing is the "personal interest that must exist at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 189 (2000). Moreover, the requisite personal interest that must exist at the commencement of a case must continue throughout its existence. *Id.* The personal interest that constitutes standing consists of three elements: (1) an injury in fact, *i.e.,* an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 181-82.

When a plaintiff seeks equitable relief, he cannot establish an injury in fact simply by showing that he has suffered some harm in the past. Rather, he must demonstrate a "real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496-97 (1974) (holding that plaintiffs who sought to enjoin judges from racial discrimination lacked standing because the possibility that any plaintiff would again be charged with a crime and brought before the particular judges was speculative, especially given that plaintiffs could avoid the injury by conducting their activities within the law). The possibility of future injury must rise beyond the

level of speculative or hypothetical injury. *See Lyons*, 461 U.S. at 103 (1983) (finding a lack of standing because it was "no more than speculation" to assert that the plaintiff would someday in the future again be arrested and subjected to an unconstitutional chokehold).

In its previous ruling on Defendant State of Oregon's Motion for Summary Judgment (Dkt. 77), which was fully briefed by the State and by Plaintiff, the Court found that Plaintiff lacked standing to seek equitable relief for alleged violations of the ADA and the Rehabilitation Act by the State of Oregon. As the Court explained in that ruling:

> Plaintiff lacks Article III standing because he has not demonstrated an injury in fact that will be redressed by a favorable ruling. Specifically, Plaintiff provides the Court with no reason why he would be unable to conduct his activities within the law. Moreover, Plaintiff provides no explanation for his assertion that he will likely be booked into a county detention center and need to make a first appearance as a pretrial detainee again. The mere fact that Plaintiff has been arrested in the past does not create the real and immediate threat of repeated injury required to seek equitable relief. Accordingly, Plaintiff lacks standing to seek equitable relief.

Dkt. 77. This finding applies to Plaintiff's claims against the County as well as Plaintiff's claims against the State. Accordingly, Plaintiff lacks standing to seek equitable relief against the County, and the Court addresses Plaintiff's claims for violations of the ADA and the Rehabilitation Act only as to Plaintiff's claims for compensatory damages.

### 2. Legal Standards

"Title II of the ADA and § 504 of the [Rehabilitation Act] both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *see also* 42 U.S.C. § 12132; 29 U.S.C. § 794. To establish a claim under the ADA, a plaintiff must show that he or she: (1) "is an individual with a disability"; (2) "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities"; (3) "was either excluded from participation in or denied the benefits of the public entity's services, programs, or

activities, or was otherwise discriminated against by the public entity"; and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his or] her disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)) (quotation marks omitted). To establish a claim under the Rehabilitation Act, a plaintiff must show that he or she: (1) is "handicapped within the meaning of the [Rehabilitation Act]"; (2) is "otherwise qualified for the benefits or services sought"; (3) was "denied the benefit or services solely by reason of [his or] her handicap; and (4) that "the program providing the benefit or services receives federal financial assistance." *Lovell*, 303 F.3d at 1052. In claims for compensatory damages under either the ADA or the Rehabilitation Act, the law in the Ninth Circuit also requires that a plaintiff show that a defendant had discriminatory intent. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

In determining under the ADA or the Rehabilitation Act whether a defendant acted with discriminatory intent toward a plaintiff because of his or her disability, the Ninth Circuit applies the "deliberate indifference" standard. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *see also Daniel v. Levin*, 172 F. App'x 147, 150 (9th Cir. 2006) (unpublished) (applying the "deliberate indifference" standard to the discriminatory intent requirement for ADA and Rehabilitation Act claims). A defendant acts with deliberate indifference only if: (1) the defendant has knowledge from which an inference could be drawn that a harm to a federally protected right is substantially likely; and (2) the defendant actually draws that inference and fails to act upon the likelihood. *See Duvall*, 260 F.3d at 1138-39; *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

To satisfy the first prong of deliberate indifference, a plaintiff must identify a specific, reasonable, and necessary accommodation that the public entity has failed to provide, and that

the plaintiff notified the public entity of the need for accommodation. *Duvall*, 260 F.3d at 1138. The second prong of deliberate indifference requires a showing that the entity deliberately failed to fulfill its duty to act in response to the request for accommodation. *Id.* at 1139-40. To raise a triable issue of material fact on this point, the plaintiff must present evidence that the entity failed to undertake a fact-specific investigation, gathering from the plaintiff and qualified experts sufficient information to determine what constituted a reasonable accommodation. *Id.* The Ninth Circuit has made clear that in order to satisfy this prong, the plaintiff must show that the entity's failure to act was deliberate:

> Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.

*Id.* at 1139.

Generally, the effectiveness of auxiliary aids or services is a question of fact precluding summary judgment. *Chisolm v. McManimon*, 275 F.3d 315, 327-28 (3d Cir. 2001); *see also Randolph v. Rodgers*, 170 F.3d 850, 860 (8th Cir. 1999); *Duffy v. Riveland*, 98 F.3d 447, 454, 455 (9th Cir. 1996). A denial of a request for accommodation without investigation is sufficient to survive summary judgment on the question of deliberate indifference. *Button v. Bd. of Regents of Univ. & Cmty. Coll. Sys. of Nevada*, 289 F. App'x 964, 968 (9th Cir. 2008); *Duvall*, 260 F.3d at 1139-41.

### 3.   Applicable Regulations

As to persons with hearing disabilities, the Title II implementing regulations provide that a public entity must take steps to ensure that communications with disabled persons are as

"effective as communications with others." 28 C.F.R. § 35.160. The regulations further provide that:

> (b) (1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.
>
> (2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. *In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities.* In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

*Id.* (emphasis added). Auxiliary aids and services are defined as applicable to individuals who are "deaf or hard of hearing." 28 C.F.R. § 35.104. Regarding whether written notes are an effective accommodation, Appendix A to 28 C.F.R. § 35 explains that:

> Although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication.

28 C.F.R. § 35, App. A. Furthermore, 28 C.F.R. § 35.164 sets forth limitations on the duty to provide auxiliary aids, stating:

> This subpart does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would

PAGE 8 – OPINION AND ORDER

> fundamentally alter the service, program, or activity or would
> result in undue financial and administrative burdens, a public entity
> has the burden of proving that compliance with this subpart would
> result in such alteration or burdens.

28 C.F.R. § 35.164. The regulations further explain that: "The public entity shall honor the

choice [of auxiliary aid] unless it can demonstrate that another effective means of

communication exists or that use of the means chosen would not be required under Sec. 35.164."

28 C.F.R. § 35.160. Thus, as articulated in the Appendix, the ADA and, by analogy, the

Rehabilitation Act require that a public entity must give deference to a deaf person's choice of

auxiliary aid, unless it can demonstrate that another effective means of communication exists, or

that use of the means chosen would not be required under § 35.164.

### 4.  Analysis

In this case, the parties do not dispute that Plaintiff qualifies as an individual with a

disability who otherwise is qualified to participate in and receive services from the County, or

that the County receives federal financial assistance within the meaning of the Rehabilitation

Act. Instead, Plaintiff contends, and the County denies, that the Jail was required to provide him

with auxiliary aids and interpretive services necessary to enable him to participate in and enjoy

the benefits of the Jail's services and that written notes used by County employees were not

effective accommodations for this purpose.

Plaintiff identifies multiple separate instances in which the County allegedly failed to

fulfill its obligation under the ADA and Rehabilitation Act. As to each of these allegations,

Defendant argues that Plaintiff has failed show any evidence creating a disputed issue of fact that

the County acted with the requisite deliberate indifference that must be shown for a plaintiff to

recover monetary damages. Plaintiff responds that that he should not be required to show any

actual evidence of discriminatory intent to survive summary judgment on his claim for monetary

damages and that allegations of discriminatory intent are sufficient to survive summary judgment.

Plaintiff's argument relies on the Third Circuit's opinion in *Chisolm v. McManimon*, 275 F.3d 315 (3d Cir. 2001), which bears a striking resemblance to the present case. In *Chisolm*, the plaintiff, a deaf person, was arrested and taken to a detention center. *Id.* at 317. At the detention center, the plaintiff requested an ASL interpreter and a TTY.[4] *Id.* at 318. He was denied these auxiliary aids, and therefore attempted to communicate through notes and lip-reading. *Id.* The detention center also placed him in a cell with a television equipped with closed captioning, but did not activate the service for him. *Id.* Although the defendants eventually permitted the plaintiff to use a TTY, he did not receive it until several days into his detention. *Id.* The plaintiff therefore filed suit against the detention center, alleging that it discriminated against him by failing reasonably to accommodate his disability.  In reversing the District Court's grant of summary judgment for the defendant, the Third Circuit explained:

> Chisolm presented evidence indicating that ASL was his primary language of communication and that he was not proficient in either lip-reading or written English. From this evidence, a reasonable trier of fact could infer that these alternative aids were ineffective.

*Id.* at 328.

Plaintiff's reliance on *Chisholm* is misplaced for multiple reasons, not the least of which is that this Court is obliged to follow controlling precedent in the Ninth Circuit, primarily *Duvall*, not those of its sister circuits. Further, the Third Circuit's opinion in *Chisholm* makes no mention of a heightened standard governing claims for monetary damages in suits brought under the ADA or Rehabilitation Act. The absence of this discussion is not surprising, as *Chisholm* was

---

[4] TTY stands for Text Telephone. It is also sometimes called a TDD, or Telecommunication Device for the Deaf.

decided in 2001, the same year as *Duvall*. As the Ninth Circuit's opinion in *Duvall* explains, the applicable standard for the recovery of monetary damage under the ADA was unclear at that time, both in the Ninth Circuit and elsewhere. 260 F.3d at 1138-39. More recent opinions by circuit courts that have expressly decided the question have held that to recover compensatory damages under either the ADA or the Rehabilitation Act, a plaintiff must establish that the defendant's discrimination was intentional. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126 & n. 20 (1st Cir. 2003); *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001); *Delano-Pyle v. Victoria County,* 302 F.3d 567, 574 (5th Cir. 2002); *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009). Several other circuits, while not expressly deciding the question, have suggested or implied the same. *See Douris v. Office of Pa. Att'y Gen.*, 174 Fed.Appx. 691, 693 (3d Cir. 2006); *Moreno v. Consol. Rail Corp.*, 99 F.3d 782, 791 (6th Cir. 1996); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996). Accordingly, the Court follows *Duvall* and declines to follow *Chisholm*.

Therefore, controlling precedent in this Circuit confines the Court's inquiry to whether there is a genuine issue of whether Plaintiff was *intentionally* excluded from participation in, or denied the benefits of, the County's services, programs, or activities, or was otherwise discriminated against because he was deaf. The Court next applies this standard to each of Plaintiff's specific allegations.

### 5.  Specific Conduct of the County

As discussed above, Plaintiff identifies multiple separate instances in which the County allegedly failed to fulfill its obligation under the ADA and Rehabilitation Act. The County denies these allegations, arguing that Plaintiff presents no evidence that the County acted with the requisite deliberate indifference. Additionally, the County alleges that much of the conduct

alleged by Plaintiff to be in violation of the ADA and Rehabilitation Act was disclosed for the

first time after the close of discovery and in response to Plaintiff's motion for summary judgment

and should, therefore, be dismissed regardless of any determination on the merits. The Court

addresses the County's latter argument first and then addresses each instance of conduct alleged

to be in violation of the ADA and Rehabilitation Act.

### a.  Federal Rule of Civil Procedure 8(a)(2)

The County argues that Plaintiff's allegations involving Plaintiff's request (1) for an

auxiliary aid to make telephone calls; (2) for an ASL interpreter to speak with Nurse Julie

Nielson; (3) for closed captioning to be turned on for the Jail televisions; and (4) for an ASL

interpreter for his meetings with pre-trial services, were not disclosed until after the close of

discovery and in response to the County's Motion for Summary Judgment. "Federal Rule of

Civil Procedure 8(a)(2) requires that allegations in the complaint 'give the defendant fair notice

of what the plaintiff's claim is and the grounds upon which it rests.'" *Pickern v. Pier 1 Imports*

*(U.S), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 512 (2002)). Accordingly, "[a] complaint guides the parties' discovery, putting the

defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's

allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (refusing to

allow plaintiff to proceed at summary judgment on unpled theory of liability under ADEA

because defendant had no notice of which actions to defend). "Unless a plaintiff includes

allegations in her complaint or informs the defendant before the close of discovery of [his or] her

intent to rely on previously undisclosed allegations, [he or] she may not assert them for the first

time in opposing summary judgment." *McKinney v. Am. Airlines, Inc.*, 641 F. Supp. 2d 962, 982

(C.D. Cal. 2009) (citing *Coleman*, 232 F.3d at 1291-94).

The Ninth Circuit's decision in *Pickern* in instructive on this point. In that case, the plaintiff generally alleged that the defendant's store violated the ADA because it "contains architectural barriers that make it inaccessible." 457 F.3d at 968. In response to the defendant's motion for summary judgment, the plaintiff attempted to raise additional ADA violations that went beyond what was alleged in her complaint. *Id.* The District Court found that the plaintiff failed to provide the defendant with adequate notice of the new allegations and granted summary judgment to the defendant on those claims. *Id.* The Ninth Circuit affirmed the District Court's ruling, holding that the plaintiff could have filed an amended complaint to include the additional claims, but failed timely to do so. *Id.*

In this case, Plaintiff could have, but did not, inform the County of additional conduct that allegedly violated the ADA and Rehabilitation Act. Accordingly, the Court finds that Plaintiff failed to provide the County with adequate notice of the additional allegations and that this failure warrants summary judgment on Plaintiff's ADA and Rehabilitation Act claims premised on those allegations.[5] Despite this finding, the Court also reviewed all of Plaintiff's allegations below and finds that there is no evidence in the record creating a genuine issue on whether the County intentionally violated the ADA or the Rehabilitation Act.

### b.  Arrangement for Interpreter at Court Appearance

Plaintiff alleges that no arrangements were made by the County for an ASL interpreter to be available at Plaintiff's arraignment. It is undisputed that no ASL interpreter actually appeared at Plaintiff's January 15, 2013 arraignment. Precisely who was at fault for the lack of an interpreter is disputed. Plaintiff asserts that the County failed to provide the Circuit Court with

---

[5] Specifically, this finding applies to all of Plaintiff's allegations related to Plaintiff's requests: (1) for an auxiliary aid to make telephone calls; (2) for an ASL interpreter to speak with Nurse Julie Nielson; (3) for closed captioning to be turned on for the Jail televisions; and (4) for an ASL interpreter for his meetings with pre-trial services.

appropriate information. The County, in turn, argues that it did provide adequate information to the Court's staff to inform them that Plaintiff required an ASL interpreter.[6]

The undisputed evidence in the record shows that the County timely provided documents to the Circuit Court before Plaintiff's January 15 arraignment, including the Sheriff's Office "mark-up" list[7] and the Multnomah County Pre-Trial Release Office Interview Report. The parties agree that these documents identify that Plaintiff was deaf and required an ASL interpreter. Therefore, the undisputed evidence in the record shows that the County was not deliberately indifferent to Plaintiff's need for an ASL interpreter at his arraignment. This aspect of Plaintiff's claim is dismissed.

### c.  The Booking Process

Plaintiff alleges that he requested an ASL interpreter or an auxiliary aid during the booking process but was not provided with either accommodation. Although Plaintiff generally alleges that this process was difficult and confusing without an interpreter or auxiliary aids, Plaintiff's Amended Complaint specifically states that corrections officers did attempt to locate an available text telephone to assist Plaintiff but were unable to find one. Pl.'s Amend. Compl., p. 6 ¶ 20, Dkt. 60. The County's failed attempt to find an available auxiliary aid does not rise to the level of "deliberate indifference" that Plaintiff must show to recover monetary damages. *Duvall v. County of Kitsap*, 260 F.3d at 1138 (explaining that "bureaucratic slippage" or negligence does not amount to deliberate indifference). Moreover, Plaintiff provides no

---

[6] As the Court explained in its ruling on the State's Motion for Summary Judgment (Dkt. 77), the Circuit Court's actions are attributable to the State of Oregon.

[7] The record is unclear regarding whether the Sheriff's "mark-up" list includes Mr. Iwamoto's notes from his interactions with Plaintiff. Regardless, both parties agree the notes from Mr. Iwamoto, a County employee, indicate that Plaintiff required an ASL interpreter and that Mr. Iwamoto's notes were timely provided to the Circuit Court.

explanation as to how he was denied any benefit or service during the booking process because his preferred accommodation was not available. Plaintiff admits that he has been booked at the Jail on five previous occasions. Although the booking process is undoubtedly difficult for all arrestees, Plaintiff does not explain how the booking process would have been different in any material respect if he had been provided with his preferred accommodation. Accordingly, there is no issue of disputed fact regarding this allegation. This aspect of Plaintiff's claim is dismissed.

### d. Plaintiff's Request to Make Phone Calls

Plaintiff alleges that he made multiple requests for Jail staff to provide him with auxiliary aids so that he could make phone calls to his mother or an attorney but that no auxiliary aid was ever provided. The County's response to this allegation is that Plaintiff was given a copy of the Jail's inmate manual, which states on page 17 that inmates may obtain a TTY machine by filling out a request form and handing that form to corrections staff. Plaintiff concedes that he did not file a written request for an interpreter and the County contends that, because Plaintiff has been confined in the Jail on five separate occasions, he must have been aware that he needed to fill out a form if he wanted a TTY. Additionally, Captain Raimond Adgers, a County employee, testified that inmates may verbally request auxiliary aids from Jail staff and that Jail staff will assist inmates in filling out request forms. Dkt. 93, Ex. A.

The parties do not dispute that the Jail has TTY machines available for inmates to use for telephone calls. It is also undisputed that Plaintiff was never provided with a TTY machine. Plaintiff, however, fails to present any evidence that the County actually refused to provide him with a TTY machine. Because Plaintiff's assertion that he did not receive a TTY machine is insufficient to create a disputed issue of material fact that the County intentionally discriminated against Plaintiff, this aspect of Plaintiff's claim is dismissed.

PAGE 15 – OPINION AND ORDER

### e.   Closed Captioning on Televisions

Plaintiff alleges that he wrote a note to a corrections officer requesting that the closed captioning on the Jail televisions be turned on but that this was not done. Plaintiff does not, however, allege that this failure was intentional and provides no evidence that this failure was more than an unintentional oversight. This aspect of Plaintiff's claim is dismissed.

### f.   Plaintiff's Interactions with Nurse Nielson

Plaintiff alleges that he requested an interpreter during his interactions with Nurse Julie Nielson but that one was not provided. Plaintiff contends that Gresham police officers hurt his back and neck during his arrest but that he was unable to communicate this to Nurse Nielson to receive medical care. The County responds that Plaintiff's interactions with the nurse by written note were sufficient to comply with the ADA.

Here, Plaintiff's general complaint that no interpreter was provided upon his request is insufficient to demonstrate that the County intentionally discriminated against Plaintiff. Plaintiff's only alleged harm is that he did not receive the specific medical attention he wanted. The evidence in the record, however, shows that Plaintiff's interactions with Nurse Nielson involved little more than a standard evaluation conducted with all inmates promptly after booking. There is also no evidence in the record that Plaintiff was denied any specific benefit or service that is regularly provided to other inmates. Accordingly, this aspect of Plaintiff's claim is dismissed.

### g.   Plaintiff's Interactions with Recognizance Officer Iwamoto

Plaintiff alleges that he requested an ASL interpreter during his interactions with Recognizance Officer Eric Iwamoto on January 14, 2013. Plaintiff's allegations, however, do not specifically identify any harm suffered by Plaintiff during his interaction with Mr. Iwamoto. Instead, Plaintiff seems to argue that Mr. Iwamoto's inability to call an ASL interpreter was, by

itself, a violation of the ADA, or in the alternative, that Mr. Iwamoto's interview results would have been different and Plaintiff would have been released at his January 15 arraignment if an interpreter had been present with Mr. Iwamoto the day before. Plaintiff provides no explanation for the latter argument, and in fact concedes that Mr. Iwamoto wrote in his interview notes that Plaintiff needed an ASL interpreter for his arraignment. Accordingly, there is no disputed issue of material fact on this point and this aspect of Plaintiff's claim is dismissed.

### h.  Plaintiff's Interaction with Pretrial Services

Plaintiff alleges that he requested, but was not provided with, an ASL interpreter during his interactions with Michale Sacomano, a case manager for Pretrial Services. Plaintiff alleges that the failure to provide an interpreter led to difficult and confusing interactions with Ms. Sacomano. For example, Ms. Sacomano allegedly logged that Plaintiff missed a report when he had permission to be out of the state. Ms. Sacomano also allegedly accused Plaintiff of using his disability "as an excuse" for not following her instructions and threatened him with violation notices. Ms. Sacomano testified that Plaintiff never requested an interpreter, but did state that she had used interpreters with other deaf inmates.

Here, Plaintiff fails to create a genuine issue of whether Ms. Sacomano's failure to use an ASL interpreter in her interactions with Plaintiff actually caused him harm. Plaintiff's allegations, at best, show that Ms. Sacomano was discourteous. Plaintiff, however, did not actually suffer any cognizable harm. Plaintiff's only concrete allegation, that Ms. Sacomano incorrectly logged that Plaintiff missed a required report, amounts no more than "bureaucratic slippage" that does not rise to the level of intentional discrimination against Plaintiff. This aspect of Plaintiff's claim is dismissed.

**B.  Plaintiff's Claim for Negligence**

In addition to his claims under the ADA and the Rehabilitation Act, Plaintiff brings a claim for negligence based on County employees' failure to provide him with an interpreter or auxiliary aids while he was at the Jail. Plaintiff alleges that the County's failure to provide auxiliary aids was negligent because it harmed Plaintiff's liberty and property. Under Oregon law, a common law negligence claim requires the plaintiff to demonstrate that: (1) defendant's conduct caused a foreseeable risk of harm; (2) the risk is to an interest of a kind that the law protects against negligent invasion; (3) defendant's conduct was unreasonable in light of the risk; (4) the conduct was a cause of plaintiff's harm; and (5) plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent. *Solberg v. Johnson*, 306 Or. 484, 490-91 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1 (1987) and *Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 606 (1970)). Under *Fazzolari,* the Oregon Supreme Court has abandoned the traditional notion of "proximate cause," as well as the concept of common-law duty, for cases involving personal injury or property damage in the absence of a special relationship. *Fazzolari*, 303 Or. at 17. In the alternative, Plaintiff also alleges that the County had a special duty to protect Plaintiff's liberty and property, and that this special duty required the County to provide Plaintiff with auxiliary aids.

To support his claim for negligence, Plaintiff does no more than reassert the same allegations against the County that Plaintiff raised under the ADA and Rehabilitation Act. Reviewing Plaintiff's alleged harms, the Court finds no evidence in the record showing a genuine issue that Plaintiff suffered a cognizable harm that was caused by the County's allegedly negligent conduct. For example, Plaintiff alleges that Mr. Iwamoto's conduct was negligent and that he was somehow the cause of Plaintiff's delayed release from the Jail. Plaintiff concedes,

however, that the County did provide documents to the Circuit Court indicating that Plaintiff was deaf and required an ASL interpreter. The evidence in the record, even when viewed in the light most favorable to Plaintiff, demonstrates that only the Circuit Court, a State actor,[8] may have been negligent.

Similarly, Plaintiff's claim that the County negligently failed to provide a TTY so that Plaintiff could call an attorney or his mother is without merit.[9] Plaintiff's claim that he could have contacted an attorney and that his attorney would have arranged for his immediate release from the Jail is speculative. In addition, Plaintiff's claim that a phone call to his mother would have prevented his van from being stolen by a third-party is similarly speculative, and in any event, is not a harm that the County can be found liable for under Oregon law. *See Buchler v. State By & Through Oregon Corr. Div.*, 316 Or. 499, 511-12 (1993) (holding that "mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it"). For these reasons, the Court grants summary judgment against Plaintiff's claim for negligence.

## C. False Imprisonment

Plaintiff contends that his confinement by the County was unlawful because he was held longer than 36 hours without arraignment in violation of Or. Rev. Stat. ("ORS") § 135.010. To state a claim for false imprisonment under Oregon law, a plaintiff must allege that: (1) the defendant confined the plaintiff; (2) the defendant intended its actions to cause confinement;

---

[8] *See* n. 6, *supra.*

[9] As explained in more detail above, Plaintiff's allegation that he requested a TTY from the County to make phone calls was raised for the first time in Plaintiff's response to the County's Motion for Summary Judgment. Therefore, the Court also grants summary judgment to the County on that portion of Plaintiff's negligence claim premised on a negligent failure to provide a TTY to make phone calls.

(3) the plaintiff was aware of the confinement; and (4) the confinement was unlawful. *Oviatt v. Pearce*, 954 F.2d 1470, 1479 (9th Cir. 1992). ORS § 135.010 states in relevant part:

> Except for good cause shown or at the request of the defendant, if the defendant is in custody, the arraignment shall be held during the first 36 hours of custody, excluding holidays, Saturdays and Sundays. In all other cases, except as provided for in ORS 133.060, the arraignment shall be held within 96 hours after the arrest.

*Id.*

Plaintiff's specific contention regarding his claim of false imprisonment is that the 12 additional hours Plaintiff spent in jail after Judge Dailey postponed Plaintiff's arraignment[10] amounts to "unlawful" confinement because, but for the County's alleged negligent failure to inform the Court that Plaintiff was deaf, Plaintiff likely would have been released from jail one day earlier. This argument, framed as a claim for false imprisonment, is without merit. Plaintiff does not contend that Judge Daley's order to postpone his arraignment was unlawful or that the County's compliance with that order was unlawful. Instead, Plaintiff complains only of the County's negligence in allegedly failing to inform the Court that he required an interpreter and of the Circuit Court's negligence in not acting upon that information. Because it is the alleged negligence of the County that Plaintiff actually objects to, Plaintiff's claim appropriately sounds in negligence rather than the intentional tort of false-imprisonment.

Plaintiff's real complaint appears to be that Judge Dailey did not order that he be released immediately and instead rescheduled his arraignment to the following day. As the Court's previous ruling on the State of Oregon's motion for summary judgment (Dkt. 77) found that Judge Dailey's actions were covered by absolute judicial immunity, and Plaintiff's allegations

---

[10] As explained above, on January 15, 2013, Plaintiff appeared for arraignment by video conference before Multnomah County Circuit Judge Kathleen Dailey. No ASL interpreter was present at that time. When Judge Dailey learned that Plaintiff was deaf, she postponed Plaintiff's arraignment to the following day, when an ASL interpreter would be available.

are appropriately directed at the conduct of Judge Dailey, Plaintiff's claim for false imprisonment must be dismissed.

Furthermore, the statutory text of ORS § 135.010 does not indicate that Plaintiff must be *released* from the Jail within 36 hours as Plaintiff suggests. Instead, ORS § 135.010 only requires that an arraignment be *held* within 36 hours unless there is "good cause shown" for the delay. The County, however, did in fact bring Plaintiff for arraignment on January 15, in compliance with the requirements of ORS § 135.010. It was Judge Dailey, not the County, who ordered that Plaintiff's arraignment be continued until the following day. Accordingly, to the extent that Plaintiff's claim for false imprisonment is solely premised on a violation of ORS § 135.010, the Court finds that the County did not violate the statute. Moreover, even if the County's alleged negligence did contribute to the Judge's decision to continue Plaintiff's arraignment to the following day, and that negligence resulted in a violation of ORS § 135.010 attributable to the County, the Court finds that the County's compliance with the Judge's scheduling order amounts to "good cause shown" within the meaning of ORS § 135.010.

## CONCLUSION

Defendant Multnomah County's Motion for Summary Judgment (Dkt. 85) is GRANTED. This case is DISMISSED.

**IT IS SO ORDERED**.

DATED this 24th day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 21 – OPINION AND ORDER